May it please the Court, excuse me. I'm Karen Landau. I represent Keith Alden in both of the two related cases that the Court's considering today. Unless the Court has a preference, I will start with the first case in which there's the claim is whether he was denied due process because the Court's decision in Oakland Cannabis Buyers Club was still controlling authority, although certiorari had been granted. Why wasn't that defense waived? Well, Your Honor, first, well, he did consent to what the district court did. But first of all, he was representing himself. And the Court had already decided that he was going to represent himself. So I think as a rule, it says a defendant who chooses to represent himself can't waive a defense, is there? Well, I think what we have to look at is whether the error was forfeited or waived. If it's waived, then it's still considerable for plain error. But if it were forfeited. If it were forfeited, then it falls under this Court's doctrine in Perez, which is invited error. If it were forfeited, you're right, I misspoke, Your Honor. Right, then it's subject to plain error review. That's right. But not if it's waived. Not if it's waived. But I don't think the record here shows the type of intentional relinquishment of a known right that the Perez case requires. There's no indication that he Why not? Didn't his advisory counsel tell him, well, you know, this is a viable defense? He says, well, I don't want to raise it. Well, that's not on the record, though. The Court said, you know, the government moved to exclude the necessity defense. And the Court said, well, Mr. Alden, this is what this means. And he said, that sounds reasonable to me. There's no indication that he understood, you know, he understood that medical that evidence of medicinal use of marijuana was not going to come in. But that's different from a defense that at the time he committed his conduct, there was a controlling case that made him I mean, it's such a technical distinction, but it's a real one. The claim here is whether Mr. Alden was denied due process because he was deprived of a defense that existed at the time of his conduct. But that cuts him an enormous amount of slack because he's chosen to represent himself and apparently decided to disregard whatever his advisory counsel was telling him, which clearly is not going to be in the record. We don't know what the discussion is. That's right. But like I said, it's so much slack, it begins to say that if you choose to represent yourself, you can pretty much get away with what you want because your ignorance is weighed in your favor. And I don't know that ignorance is supposed to be weighed in your favor if you've elected to forego counsel. Well, I think the Court's, well, that may be the case. It's true that pro se defendants who represent themselves are, are they're required to comply with the rules of the Court and, excuse me, and they're required to, you know, obey the rules and they're on their own. But here, what we're talking about is, I mean, I have to concede that the review here is for plain error. But we're talking about the distinction between waiver and forfeiture. And it's clear under the control, you know, the en banc decision in Perez that waiver requires the intentional relinquishment of a known right and the record does not demonstrate that he knew or that he understood that there was this due process entitlement. He had two trials, didn't he? Yes. This was the first one. Are you talking about the first trial? Yeah, the first one. At the second one, there's no claim. The second trial, he obviously knew everything that he could have known at the first trial. That's right. And he did learn. And as a matter of fact, he, he asked his attorney. They made a motion to dismiss based on the Commerce Clause. Of course, at that point, the Supreme Court had decided Oakland, Canada's Buyers Club. Now, after the first trial, what was the basis of his new trial? The basis of his new trial, Your Honor, was a second conviction because there was It was another case. There was a separate case. That's right. And that second case was How did that first trial prejudice him now in his presence? Well, he's in custody on it. He's in custody. Well, his probation, the first conviction resulted in a sentence of five years of probation. And he got probation. And he got probation. But when he committed the second offense and They gave him a pink slip on that. That's right. His probation was revoked. And he received a sentence of one year on the first case and the 44 months on the second case. If the court Are you ready to talk about the second trial? I can talk about the Commerce Clause, as you know. Okay. The second trial has this interesting question about Commerce Clause. That's right. Because now we're getting some lawyer's law in here now, not just police practices and defense strategy. Well, yes. So the claim in the second case is that the is whether the Commerce Clause, whether the extension of the Controlled Substances Act to the cultivation of marijuana for medicinal purposes, the local cultivation. When you say the claim in the second case, are you conceding that that claim of error doesn't apply to the first case? Well, I don't like to concede it, but I didn't make the claim. So in a sense, if there's any ineffectiveness, it's probably on my part for not arguing it was plain error in the first place. I did not see in the record, however, where the Interstate Commerce Clause claim was raised in the first case. It hadn't occurred to anybody yet, had it? Well, that's actually not true because the first decision in Oakland Cannabis Buyers Club clearly reserved that question, and nobody made the motion in the second. Nobody made the motion. In other words, Mr. Alden was arrested five days before Oakland Cannabis Buyers Club was decided by the Supreme Court. So he was tried after that. But nobody raised the Commerce Clause claim. You don't think in a criminal case whether or not Commerce Clause is properly invoked as a jurisdictional issue? No, I do think it's jurisdictional, and that's why I must – as I said, I did not raise the claim. And clearly, if this Court were to rule that the prosecution of Mr. Alden is precluded by the Commerce Clause, then I would have been ineffective. Isn't that the argument you're making in the second case? It's the argument I'm making in the second case, absolutely. Okay. There's four factors that this Court has to consider in evaluating whether a statute governs – Do we really have to consider any factors? I mean, isn't this case controlled by race? Well, it's procedurally different. The race case is – I know that, but isn't it still controlled by race, regardless of the procedural difference? I mean, what is the difference in the principle of law? No, the principles of law are the same. And that you seek to apply here. They're the same. And, yes, it is arguably controlling, except that the race case came up in the context of a preliminary injunction. And so essentially what the panel, what the majority ruled was that the plaintiffs had demonstrated a substantial likelihood of success on the merit on the four Morrison factors. Here we have a different – so in a sense, we have a higher burden, because they only had to show a substantial likelihood of success. I have to convince you that there's a Commerce Clause violation. In addition, there are some other distinctions, although I don't think they're determinative. But Mr. Alden was convicted of cultivating a number of plants. And the record was not developed. See, in race, the record was very well developed below. Here he made the motion it was denied. And the record was not developed. The government – By the way, what are we supposed to make of the fact that this case involves literally thousands of plants, right? Both cases involve at least 1,000 plants. Well, actually, no, it's less than 1,000. But – I thought there was more. Well, the judge found that he was responsible for 900 plants in the second case. And I don't recall the total in the first case off the top. Plus there were 500 that were stolen. Well, those actually, I believe, were included. Right. But – but so there were, say, we'll say 900 plants, although he's not charged with distribution. That is a fact that distinguishes this from race, isn't it? Yes, it does, Your Honor. But there are – yes, the number of plants distinguishes it. And it is – In other words, he can't make the argument that, in a sense, race is based on it. Well, in a sense, yes, he – well, he may be able to, but because it wasn't developed below, it's difficult to say at this point. Mr. Alden, there was evidence, especially in the first trial, but also in the second, that a large – there was quite a few people that lived on the property. And there was evidence that more than just Mr. Alden was involved in the cultivation of the plants. In the first trial, for example, there was testimony from a witness that said, you know, there were a lot of other people around, they were growing marijuana, and a lot of them had serious illnesses like AIDS and cancer. So the record does not show whether – and, of course, then Mr. Alden ultimately said, oh, he didn't want anyone else to get into trouble. That's in the record, too. So he – there actually may be a – there may be a plausible claim that there are enough people involved in this. I mean, nobody's made a determination of what's – I mean, in California, if this were a prosecution in California State Court, the jury would be instructed on the medical necessity defense, and they could decide whether, in fact, he was cultivating it for commercial purposes or he was really cultivating it for him. And it would, you know, probably present evidence as to who else was involved and whether they had serious illnesses, whether they fell within California's definitions. But here, that – because the government was successful in excluding all the medical necessity evidence, which certainly at the second trial was legitimate, and because this motion was not developed, partly because of the situation of Mr. Alden, it's not to develop the record either. You know, it's not there. So, I mean, if this Court finds that Raich controls, I would submit the proper procedure would be a remand for further proceedings, and, you know, maybe he'll be able to make it out, maybe not. If the Court doesn't have further questions, I'll reserve my time for rebuttal. Fine. Thank you. Good morning. I'm Amber Rosen representing the United States in these matters. I'm going to focus primarily my argument on why the Raich case does not control the outcome of this case. In a nutshell, that argument is that Raich is limited to marijuana cultivated exclusively for personal medicinal use in compliance with state law, and that in this case, defendant's crops were intended for distribution such that it's applied to him. Just a minute. Just a minute now. Didn't the grand jury refuse to indict on that count? Well, Your Honor, the defendant has conceded in both of his briefs that he was growing the marijuana to distribute to cannabis clubs. But that's not the charge. No, it's not the charge. So the question is, I mean, should the charge stand? Don't we just look at the charge? No. I think when we're looking at whether or not Raich controls. He's convicted of a certain charge. He's not convicted of possession with intent to distribute. You're correct. He was convicted. We don't look at that, do we? I think when you're looking at whether or not the holding of Raich would apply in this case, you would still look to the underlying conduct and whether or not the conduct is within the narrow holding of Raich. Before addressing that, though, I want to briefly go over some of the facts of both of the cases, because I think some of them were either not emphasized much in the brief or were not even mentioned in the briefs, in part because prior to Raich, they weren't particularly relevant to the Morrison analysis. By the way, before you go on, do you know whether the government has or intends to petition for re-hearing in Raich? It has. It has? It has filed a petition for en banc and in the Stewart case also. Go ahead. Thank you. The defendant had called the sheriffs out to his property. Someone had died at the property, not under suspicious circumstances or anything, but the sheriffs got out there and they smelled marijuana once at the property. This was in May of 2001. And so they asked Mr. Alden about it, and he showed them his large indoor grow cultivation operation that he had, and they saw many plants, and so they at that time, the defendant told them that he was growing the marijuana for his own personal medicinal use, and that he was selling to other patients at about $200 per ounce, and that he was selling it to cannabis clubs. On the basis of this, they went and got a search warrant. They executed the search warrant. They seized over 1,000 plants. He was then convicted for cultivation. I'm sorry. He was indicted for cultivation, convicted by a jury of that. He was sentenced based on a finding by the court that there were 704 plants, and he was in July of 2002 sentenced to a term of probation. Isn't the question before us is whether or not the jury would have convicted if it were told that this was for personal medicinal use, and that's a valid claim, and that's not covered by the statute? You're getting now back to the claim of whether he should have been able to raise a medical necessity defense? No, no, no. I'm talking about, no, the statute only covers certain kind of conduct, and it doesn't cover, I mean, assuming Raisha's correct, it doesn't cover raising marijuana for personal medicinal use, so the jury should determine whether it was raised for that use exclusively for that use or not. Isn't that a jury question is what I'm saying? Well, I think not.  One, if I think the counsel is right, that if Raisha were found to be controlling in these cases, there would need to be a remand for a further factual development as to the purpose. Well, I mean, I think first it would have to go before a judge to find out whether he could even properly lay out the prima facie aspects for the defense, and then it could ultimately be, no, it wouldn't go to the jury because there is no medical necessity defense. It would be, it would go to the court on the legal issue of whether the use exceeded was for, was under the holding embrace such that it would be in violation of the Commerce Clause to apply it to him, and I think. It would go before the judge to determine whether or not the conduct charged in the indictment is covered by the statute, right? I think it would go. That's the question. I think it would go to the judge to determine whether the purpose for which he was growing the marijuana would make the statute unconstitutional as applied to him under the Commerce Clause. That would be a legal question for the court. The whole issue of the medical necessity defense after the Oakland Cannabis case is not an issue and would not go before a jury. He couldn't raise that. Assuming there were a remand for further proceedings, he couldn't raise it on remand because that's. Correct. Water under the bridge now. Exactly. So it would just be on the Commerce Clause issue. Just to briefly emphasize some facts in the second case, three weeks after he was sentenced in the first case, a second girl was discovered on his property. Again, he's the one who called the police out to his property because one of his tenants had been taken at knife point bound and a large amount, several pounds of marijuana. They get there. They see, again, a large indoor grow with over a thousand plants as well as 20 pounds of dried, processed marijuana. And at that time, he told the officers that he was selling to cannabis clubs, only to cannabis clubs, not out of his house to patients anymore. And according to the criminal complaint in the case, he told the officers that he was selling it to the cannabis clubs for about $3,200 to $3,500 per pound and that he did it to pay his taxes and other debts. Again, as we have discussed, no factual findings were made by the court with respect to what the defendant was doing with the marijuana, since prior to race it didn't matter. But for purposes of appeal, Mr. Alden has conceded that he was distributing his marijuana to cannabis clubs, and that's in both of his briefs. Now, with these facts in mind, I want to turn to the question of whether the Controlled Substances Act, as applied to defendant's cultivation, exceeds Congress's powers under the Commerce Clause. I submit that the answer is no, that the case is easily distinguishable from race because of the distribution. The holding in race was limited to a very narrow class of activities, and that class was defined by the court as the intrastate, noncommercial cultivation, possession, and use of marijuana for personal medical purposes, on the advice of a doctor, and in compliance with state law. That narrow class, the defendant's conduct in this case is not within that narrow class because, one, his cultivation was commercial, since he was distributing it to cannabis clubs, was not just for personal use, again, because he was growing for the cannabis clubs, and was not in accordance with state law. I think the race decision makes it pretty clear that it was not intending to include cases of distribution in its holding. And it made that point in distinguishing what the activity was in that case from distribution or sale cases. When it first defined the class, it then went on to say, and I quote, this class of activities does not involve sale or exchange or distribution. It also said in the opinion, and I quote again, the cultivation, possession, and use of marijuana for medical purposes, and not for exchange or distribution, is not properly characterized as commercial or economic activity. Doesn't that run into the question posed by Judge Tashima, which is that he wasn't charged with intent to distribute? I don't think the charge, I would beg to differ with the premise that the charge controls what facts you look at to determine what the conduct is. In other words, he doesn't have to be charged with distributing for there, in fact, to be distribution. And where he admits that he was distributing, I think the court can take recognition of the fact that what the purpose of the marijuana grow was for and say that is different from the purpose from the class of activity defined by the race course to exceed the Commerce Clause powers. We know in this case there was distribution, regardless of what the charges were. Doesn't that suggest a potential distinction, saying that you can charge, there's not a Commerce Clause question about ability to charge or convict for distribution or possession with intent to distribute, but mere possession by itself, that may be what the Commerce Clause doesn't permit Congress to. Well, I think the race case would suggest more what I'm arguing than that you look at the charge to define the conduct. And I say that because race wasn't even a criminal case. They weren't charged with anything. They weren't charged with possession. They weren't charged with cultivation. And the court was still looking at what the activity was, what the facts and the record defined the activity to be in determining whether the Commerce Clause applies. So I don't think the charge ought to be the discerning factor of what you look at in terms of determining whether Congress has the power to regulate the activity. I mean, race was not saying that section, that cultivation or possession is unconstitutional regardless of the facts related to the case. It doesn't hold that. And it's saying you need to look at the underlying conduct. So I think these two, these sentences in race show that the court was clearly trying to distinguish cases that may involve sale or distribution and reserve those cases to still say that those constitute commercial or economic activity and distinguish it from what was going on in race. And so for these reasons, I don't think race controls. The court also said in explaining why it wasn't commercial activity at issue in that case, that it was because it lacked sale, exchange, or distribution, which are the essential elements of commerce. And because we have the essential elements of commerce here, it should be deemed to be a commercial activity and, therefore, within Congress's powers to regulate under the Commerce Clause. Should there, just in the interest of economics of judicial resources, should we wait until race is final before we start worrying about how to distinguish it from this case? I think there's a certain prudence to that. I think because it's so clear in this case that there is distribution and I think it's quite clear that race didn't intend to extend its holding to cases involving distribution, that you need not wait. But I certainly think that would not. If race survives in bank traffic that's going on now, I guess, then we would have to reach the question and decide whether it's distinguishable. Right. If race is reversed, you don't even have to. If it doesn't survive, then we all go home, don't we? Exactly. Stop worrying about it. So we would not object to that, to the Court doing that. I think even if race is upheld, this case can be decided now because it's so distinguishable. But you're right. You need not even reach the issue if race exists. I think we understand your position now on the Commerce Clause issue. Just spend a minute or so on the why, telling us why you believe, I guess this is your position, that the medical necessity of defense, that was a matter of labor as opposed to a forfeiture subject to plain error review. Sure. That was your position. It's not review. The defendant can't raise it at all because it was waived, right? You're right. That's our first line of defense. And I think that that's correct because, as Alano makes clear, it is a known relinquishment or it's the purposeful relinquishment of a known right. And I think we have that in this case. Well, it really was annoying because there's nothing in the record to show that the defendant was made aware of what he was giving up. There is nothing in the record, as the Court has already recognized, suggesting exactly what the conversation was between defendant and his advisory counsel. But what we do know is that the government made the motion. The Court gave the defendant ample time to respond and, in fact, quote, and urged him to talk to Mr. Portman about it. We also know that Mr. Portman, his advisory counsel, told the Court that he believed that the defendant had this defense all along and that he could have raised it and that, quote, he decided not to for reasons I do not understand. But in any event, he didn't oppose the government's motion. And I think from that we can infer that they did, in fact, have the conversation. He was, in fact, advised to object. And he chose not to. So I think we have sufficient facts in the record from which this Court could find there was a known relinquishment of the right and should not entertain the claim at this point. But even if this Court were to entertain it, there certainly is not plain error. I would submit there's no error at all because cert had already been granted in the case by the time he was doing his conduct such that a change in the Ninth Circuit law at that time was not, what's the test, unforeseeable and indefensible under Rogers v. Tennessee. Well, as I recall now, our case law reserves on that issue, doesn't it, on whether or not the granting of cert is a determinative event. I think you're right. It's not completely clear that it's determinative, where there's no split in the circuit. What the case said was, or at least until cert. But I think even under the test of Rogers v. Tennessee, which definitely is the test that should be applied, that the fact that cert's been granted suggests that a change in the law can be expected. I mean, cert is an unusual event. And cert had been granted at the time he was still doing the conduct such that it was not error. And it certainly wasn't plain. I mean, given that cert would seem to suggest that a change in the law is coming, it certainly wasn't plain error for the Court to exclude it. With that, I submit it. Thank you. All right. Thank you, Ms. Rosenbaum. Rebuttal? Addressing the last issue first, I'd like to refer this Court to United States v. Burt on the plain error issue. In the Burt case, the pro se defendant requested the erroneous jury instruction. But nonetheless, this Court reversed under the plain error standard. I think it would be difficult to distinguish. On the subject of ---- Well, this is Mr. Portman is one of the most distinguished defenders we've got in this circuit. And he was standing there telling him to raise the point. Right. So how can you say this was not a waiver? Well, Mr. Burt was actually represented by Richard Mazur, who's also a very distinguished defense attorney. But aside from that, the record doesn't show ---- the record doesn't show whether Mr. Portman advised him to raise the medical necessity defense or whether there was an explanation of the due process nature of the question. And there's just no showing on that subject. On the question whether that was correctly ---- on the question of due process itself, this Court held in Qualls reversing, you know, overruling Albertini that the focus after Rogers is on the circuit split, not whether cert has been granted. The grant of cert, the change in the law, it has to ---- it's not enough to have the idea that the law might change be foreseeable. There has to be notices to what the law might change to. So if a grant of certiorari is enough, then we're asking defendants to go out and read the government or the parties. But we've never held that that is necessary, have we? Well, right. But what I'm saying is that that ---- well, but the Supreme Court has said in Rogers that you have to have notices to ---- well, actually not in Rogers, but in Bowie, which is the seminal case, there has ---- it holds that there has to be notices to what the law might become. And in Rogers, they follow that by saying, okay, if there's a circuit split, or in the Rogers case, if the vast weight of authority is against this, this rule, then we're going to hold defendants to know about that. But what we have here is different because we have a new law. We have one ninth circuit decision. There is no circuit split. So, you know, should defendants have to accept the government's view? And what the government is saying by urging this definition of due process is should defendants have to accept the government's view of the law? On the interstate commerce clause, I want to make a few things clear. We don't concede that he was cultivating for the Cannabis Club. He was cultivating a lot of plants, and he made a lot of different statements. A lot of what the government counsel has referred to is not part of the record. For example, there's a police report in the excerpt of record that they submitted, which is not part of the record below. The matter was not developed. So the ‑‑ Your position on the waiting for race to come to rest. I think it would be appropriate to defer. To put the prejudice, your ‑‑ No, no, it wouldn't. I think it would be appropriate. I think, I mean, it may take a while, depending on what happens in bank and whether a petition for writ of certiorari is filed, which is likely to happen regardless of which way the decision comes out. But, no, I don't think it would be unreasonable at all. Your client is in juris file waiting for this case to be decided. Well, yes, but he is in custody, and I suppose if things went along far enough perhaps we would ask for bail. But at this point, that's not. If there are no further questions, I'm going to submit. Okay. Thank you. We thank both counsel. This case is submitted for decision.
judges: Goodwin, Tashima, Clifton